IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Henry Hill,<br>　　　　　　Plaintiff,<br><br>　　-vs-<br><br>Commissioner of Social<br>Security,<br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)　　No. 20-cv-3262<br>)<br>)<br>)<br>) |

## Opinion and Order

Before the Court is plaintiff's Motion for Summary Judgment (Doc. 16) and the defendant's Motion for Summary Affirmance (Doc. 18). The Motions are fully briefed, and for the reasons stated herein, plaintiff's Motion for Summary Judgment is DENIED and the defendant's Motion for Summary Affirmance is GRANTED.[1]

## I.　Background

Plaintiff, a high school graduate who was 47 years old at the time of his alleged onset date, states that he has a combination of medical problems including stroke, no use of his left arm, hands, fingers or leg, and weakness on his left side. R. 275. Plaintiff last worked as a custodian and has not worked since April 20, 2018. R. 276. Plaintiff

---

[1] References to the pages within the Administrative Record will be identified by R. [page number]. The Administrative Record appears at Docket Entry 8 (Doc. 8).

stated that he stopped working because of his medical conditions.  R. 295.

On May 8, 2018, plaintiff filed a Title II application for a period of disability and for disability insurance benefits. R. 49. On May 8, 2018, plaintiff filed a Title XVI application for supplemental security income. *Id.* In both applications, plaintiff alleged disability beginning on April 20, 2018. *Id.* at 48.

The claims were denied both initially and upon reconsideration. On August 28, 2019, plaintiff, represented by counsel, appeared for a hearing in front of an Administrative Law Judge (ALJ) during which the ALJ heard testimony from plaintiff and an impartial vocational expert. R. 65-105.

On September 20, 2019, the ALJ issued an unfavorable decision. R. 46-64.   The ALJ found that plaintiff has the severe impairments: status/post stroke, diabetes mellitus, and hypertension (20 CFR 404.1520(c) and 416.920(c)). R. 51. However, the ALJ determined that plaintiff was not disabled at any time from his alleged onset date because he had the residual functional capacity to perform light work with additional postural and environmental limitations. R. 53. In August 2020, the Appeals Council denied review, making the ALJ's decision the final decision. R. 1–7; *see generally Butler v. Kijakazi*, 4 F.4th 498, 500

2

(7th Cir. 2021).

## II.    Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined in the Social Security Act ("the Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To determine if a claimant is disabled, the Commissioner conducts a five-step inquiry. 20 C.F.R. § 404.1520. At Step One, the ALJ determines whether plaintiff is engaged in substantial gainful activity. *Id.* at (a)(4)(i). At Step Two, the ALJ determines whether plaintiff's impairments are severe. *Id.* at (a)(4)(ii). An impairment is "severe" if it significantly limits plaintiff's ability to perform basic work activities. *See* 20 C.F.R. 404.1520(c). At Step Three, the ALJ determines whether any of plaintiff's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404 of the C.F.R. 20 C.F.R. § 404.1520(a)(4)(iii). At Step Four, the ALJ evaluates plaintiff's residual functional capacity ("RFC") and determines whether the claimant can perform past relevant work based on the RFC. *Id.* at (a)(4)(iv). The RFC represents the most plaintiff can do given his limitations. 20 C.F.R. §

404.1545(a). An RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). To determine an RFC, the ALJ must consider plaintiff's symptoms; their intensity, persistence, and limiting effects; and the consistency of these symptoms with the objective medical evidence and other evidence in the record. *Id.* at (a)(1). Finally, at Step Five, the ALJ determines whether plaintiff can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may require the testimony of the vocational expert ("VE") to make a Step Five determination. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

Here, the ALJ found at Step One plaintiff has not engaged in substantial gainful activity since April 20, 2018. At Step Two, the ALJ determined plaintiff has the severe impairments of status/post stroke, diabetes mellitus, and hypertension. At Step Three, the ALJ concluded plaintiff's impairments did not meet or equal the severity of a listed impairment.

At Step Four, the ALJ concluded plaintiff retained the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that:

> . . . he cannot climb ladders, ropes, or scaffolds. He can
> perform frequent stooping, but only occasional balancing,

4

kneeling, crouching and crawling, and climbing ramps and stairs. He must avoid hazards and concentrated exposure to vibrations. He can perform occasional pushing and pulling with the upper extremities, but no operation of foot controls with the non-dominant lower extremity.

R. 53. Finally, at Step Five, the ALJ determined although plaintiff was unable to perform his past relevant work, he was able to perform work as cashier and office helper. R. 58.

## III.   Standard of Review

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standard and the decision is supported with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).   Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).    "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*   On appeal, this Court, while reviewing the entire record, does not substitute its judgement for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v Apfel*, 152 F3d 636, 638 (7th Cir. 1998).   And although significant deference is afforded to the ALJ's determination, the Court does not "merely rubber stamp the ALJ's decision."   *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir.

2002).   "The ALJ must 'build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence.'" *Id.* (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

## V.   Analysis

Plaintiff argues that this case should be remanded for three reasons.   First, plaintiff argues the ALJ did not properly consider opinion evidence. Doc. 16 at 8-9. Second, plaintiff argues that the ALJ did not properly consider plaintiff's subjective symptoms. *Id.* at 10-12.   Third, plaintiff argues the ALJ's decision was not supported by substantial evidence. *Id.* at 7.

### a. Evaluation of Medical Opinions

Plaintiff argues this case requires reversal because the ALJ erred by not properly applying 20 C.F.R. § 404.1520c when evaluating opinion evidence.   The ALJ must articulate "how persuasive" the ALJ finds "all of the medical opinions and all of the prior medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The applicable regulations direct the ALJ to evaluate an opinion's persuasiveness using several factors, the most important of which are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).   The ALJ need only "minimally articulate [her] reasons for crediting or rejecting" each opinion. *Clifford v.*

6

*Apfel*, 227 F.3d 836, 870 (7th Cir. 2000). The Seventh Circuit has also emphasized the "importance of reading the entirety of an ALJ's decision together" because "anything else would result in redundancies in the analysis." *Krug v. Saul*, 846 F. App'x 403, 407 (7th Cir. 2021), *citing Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021). An ALJ's discussion and analysis of medical opinions can find support "elsewhere in his decision." *Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020).

In this case, the ALJ provided an extensive narrative of the medical evidence in the record. R. 53-57. The ALJ stated that he considered the state agency physicians' opinions and found their physical assessments "reasonably consistent" with the medical evidence and plaintiff's longitudinal treatment record. R. 57. The ALJ further stated he modified the limitations proposed by the state agency opinions to reflect evidence he received at the hearing. *Id.*

There are two state agency opinions in this case. On August 9, 2018, at the initial disability determination level, Dr. Richard Bilinsky evaluated plaintiff's medical records and found him not disabled. R. 111-132. On October 12, 2018, at the reconsideration level, Dr. Phillip Galle evaluated the same medical records provided to Dr. Bilinksy and similarly found him not disabled. R. 135-156. The doctors' assessments were identical. They both found plaintiff to have severe impairments of

vascular insult to the brain and low vision. The doctors' RFCs limited plaintiff to light work with additional limitations. They limited plaintiff to frequently climbing ropes and stairs, kneeling, and crouching. They restricted plaintiff to occasionally climbing ladders, ropes and scaffolds and crawling. They put no limitations on balancing and stooping. They found plaintiff had limited fine and gross manipulation in his left, nondominant hand and limited exertional abilities when pushing and pulling, including hand and foot controls, in his upper and lower left extremities. They found plaintiff had a visual limitation for far acuity but no limitations for near acuity, depth perception, accommodation, color vision, and field of vision and thus should avoid workplace hazards, including machinery and heights. Regarding other environmental limitations, they determined plaintiff should avoid concentrated exposure to vibration.

The RFC provided by the ALJ included limitations equal to or greater than those provided in the opinions in the record. Specifically, while the ALJ's RFC restricted plaintiff from climbing ladders, ropes, or scaffolds altogether, the opinion RFCs allowed for occasional climbing. R. 53. The ALJ restricted plaintiff to occasional balancing, kneeling, crouching, crawling, and climbing ramps and stairs. *Id.* The opinion RFCs allowed for unlimited balancing and frequent climbing ramps and

8

stairs and crouching. All RFCs limited plaintiff to light work and occasional handling or fingering with the upper left extremity, to avoid workplace hazards, and to avoid concentrated exposure to vibrations. Only the ALJ's RFC included no operation of foot controls with the lower left extremity. *Id.*

Courts in the Seventh Circuit have repeatedly found no error when there is "no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004), *see also Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021). Therefore, because Drs. Blinsky and Galle did not impose greater limitation than the ALJ, there is no error.

Plaintiff argues that because the opinions found plaintiff had a severe visual impairment and the ALJ did not, the ALJ did not comply with SSR 96-8p by failing to explain the inconsistency. Doc. 16 at 8-9. However, the ALJ specifically stated that although the plaintiff was treated for low vision, his Snellen examination showed:

> [T]he (plaintiff's) visual acuity in the right eye (OD) was 20/50, with pinhole 20/50, and 20/40 in the left eye (OS). In addition, the (plaintiff's) sclera were clear with no icterus, his conjunctiva was pink, and his pupils were round, equal, and reactive to light. Additionally, the (plaintiff's) extraocular muscles were intact, there was no nystagmus, and

funduscopic examination was negative for hemorrhages or exudates.

R. 52 (internal citations omitted).  Therefore, the ALJ found plaintiff's low vision was not severe. *Id.*  The ALJ explained that at a medical evaluation on May 7, 2019, plaintiff's treating physician noted his ocular muscles were intact and his visual fields were normal to confrontation.  R. 56, 57, R. 555.  Despite finding plaintiff's visual impairment not severe, the ALJ's RFC still included the limitation to avoid workplace hazards. Furthermore, at the hearing the ALJ elicited testimony from the VE that unlimited far acuity was not a visual requirement for any of the jobs the plaintiff qualified for under the ALJ's RFC.  R. 100.

Plaintiff's request to find the opinion evaluation in error is akin to asking this Court to reweigh the evidence and substitute the Court's judgment for that of the ALJ. This Court cannot do so. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."). The ALJ's evaluation of plaintiff's medical opinions is affirmed.

### b. Evaluation of Subjective Symptoms

Plaintiff argues the ALJ erred by failing to conduct a proper,

explicit credibility analysis as required by SSR 16-3p. Doc. 16 at 10. This argument, too, is unavailing.

A claimant's assertions of symptoms, taken alone, are not conclusive of a disability. 42 U.S.C. § 423(d)(5)(A). The ALJ must square a claimant's subjective symptoms with a determination of whether those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *See also* SSR 16-3p. It is not the role of the ALJ to impeach the claimant's character, but the ALJ still should assess the credibility of assertions by the claimant. *Cole v. Colvin*, 831 F.3d 411,412 (7th Cir. 2016). The ALJ's assessment must be reasoned and supported by evidence. *Jens v. Barnhart*, 347 F.3d 209, 213-214 (7th Cir. 2003). To determine the credibility of allegations of disabling symptoms, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record. 20 C.F.R. § 404.1529(c). "[A]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence," *Cole,* 831 F.3d at 416. Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by

11

other objective evidence. 42 U.S.C. § 423(d)(5)(A); *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022); *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). "[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

Plaintiff argues the ALJ failed to consider any evidence about plaintiff's symptoms other than objective medical evidence. This is not accurate. The ALJ provided a thorough examination of various types of evidence. The ALJ considered the objective evidence along with many other factors named in SSR 16-3p, such as plaintiff's course of treatment, observations during physical examinations, and reported daily activities. R. 53-57. Additionally, as stated above, the ALJ addressed the medical opinions in the record. The ALJ found that plaintiff's underlying impairments could be expected to produce his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 57. The ALJ explained that while plaintiff reported severe weakness in his left leg, arm, and hand, the

12

record did not establish the weakness to be as severe as plaintiff reported.

Regarding plaintiff's function report, the ALJ noted that after his stroke, plaintiff reported no use of his left arm, hands, fingers, and leg. R. 53. He stated he could not walk for any appreciable distance because he experienced labored breathing on exertion. *Id.* He repeated these claims in his hearing testimony. R. 70-92. The ALJ discussed how plaintiff consistently presented to doctors complaining of weakness in his left lower and upper extremities from the time of his stroke in April 2018.

However, contrary to plaintiff's assertions about shortness of breath, at multiple appointments, the ALJ made note that medical providers found plaintiff's lungs were clear to ausculation bilaterally with no wheezes, rales, or rhonci; he had no cough or shortness of breath; and he did not complain about any breathing problems. R. 55, 56, 503, 511, 520, 551, 555. At his comprehensive internal medicine consultation in August 2018, plaintiff reported blurred vision. R. 503. However, plaintiff testified he continued to drive. R. 57, 75. Additionally, the only medical notations mentioning plaintiff's sight found vision fields normal and no mention of plaintiff complaining to doctors about any vision problems after his 2018 appointment. R. 52, 56, 57, 503, 554-555.

Regarding his complaints of weakness, although plaintiff stated in his function report he had little to no use of his left leg and hand (R. 53, 289), the ALJ noted many occasions on which he simply complained of weakness. In August 2018, a medical consultant noted plaintiff had a limp favoring his left leg and less than full function in his left-hand grip and motor functions. However, the medical consultant also found plaintiff's left lower and upper extremity strength at 4/5, he had full range of motion in his joints, he suffered no muscle atrophy, and his sensory examination in normal limits. R. 55, 503-504.

In September 2018, at his three-month follow up, plaintiff complained of left-side weakness, rather than total inability to use his leg, arm and hand, as noted by his provider. The nurse practitioner additionally stated that at a neurological evaluation, plaintiff did have left side weakness but he also had a normal gait, normal strength in all other extremities, normal deep tendon reflexes, and no edema. R. 55, 520-521. In December 2019, the same nurse practitioner found identical neuromuscular and musculoskeletal results. R. 55, 515. Plaitiff told the nurse practitioner that he went to physical therapy to strengthen his right side, but he stopped because he did not think it was helping. R. 55, 513.

In May 2019, plaintiff attended an appointment with a neurologist for an evaluation and one-year follow up after his stroke. Plaintiff denied any focal neurological symptoms, but reported continuing to feel weak on his left side, particularly his left hand with tightness in his left foot. R. 56, 554. He told the doctor he did not check his fasting blood sugars regularly and lives with his wife who helps him with some activities. *Id.* He told the doctor he did not follow up in the Stroke-Clinic. *Id.* The neurologist stated plaintiff was "mildly weak on the left side" with upper extremity strength at 4/5 with decreases finger movement and left lower extremity strength of 4 or 5 as well. R. 56, 555. Plaintiff's "sensation was normal to touch, there was no extinction joint position, he ambulates independently, but has a mild limp on the left side and was unable to walk in tandem." *Id.* The doctor continued plaintiff on his then current medication, told him to follow up in one year, and advised him to get control of his diabetes and hypertension, and to quit smoking. R. 56, 556.

The ALJ also considered plaintiff's documented symptoms, including his subjective testimony about weakness, when assigning an RFC. The ALJ noted he modified the limitations from the state agency opinions based on evidence he received at the hearing. R. 57. Because the ALJ imposed stricter limitations, it is clear he took plaintiff's hearing

testimony and other evidence presented at the hearing about his weakness into account. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (noting that an RFC more limiting than that of any state agency physician or psychologist illustrates reasoned consideration given to plaintiff's evidence).

For these reasons, plaintiff has not demonstrated that the ALJ's evaluation of his subjective complaints of weakness was patently wrong.

### c. Substantial Evidence

Finally, plaintiff makes a cursory argument that the decision is not supported by substantial evidence. (Doc. 16 at 7). However, plaintiff merely cites case law and does not point any relevant facts of the case or evidence in the record.  "It is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011); *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Claimants in social security disability cases are subject to waiver the same as plaintiffs in other civil cases. *See, e.g.*, *Krell v. Saul*, 931 F.3d 582, 587 n.1 (7th Cir. 2019) (finding "brief and underdeveloped" argument waived).  As such, the argument is undeveloped and therefore waived.

16

**V. Conclusion**

The ALJ did not err in evaluating the opinion of medical experts or in rejecting plaintiff's subjective symptoms. The ALJ's opinion that plaintiff was not disabled was supported by substantial evidence, and the ALJ provided adequate discussion to afford meaningful review and assess the validity of his decision.

It is therefore ordered that plaintiff's motion for summary judgment (Doc. 16) is DENIED. Defendant's motion for summary affirmance (Doc. 18) is ALLOWED.

ENTERED: September 29, 2023

    /s/Karen L. McNaught

KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE